JOSEPH G. SANSONE (NY Bar No. 4043659)
RAHUL K. KOLHATKAR (Cal. Bar No. 261781)
 kolhatkarr@sec.gov
JOHN K. HAN (Cal. Bar No. 208086)
 hanjo@sec.gov
ALICE L. JENSEN (Cal. Bar No. 203327)
 jensena@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
(415) 705-2500

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| SISU CAPITAL, LLC, TIMOTHY OVERTURF, and HANSUELI OVERTURF, | |
| Defendants. | |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

### SUMMARY OF THE ACTION

1.      From approximately 2017 to 2021, Defendants Sisu Capital, LLC ("Sisu") and Timothy Overturf (Sisu's owner and Chief Executive Officer), breached their fiduciary duties as investment advisers, including by making unauthorized and unsuitable trades on behalf of, and making material misrepresentations to, their clients.  Among other things, Sisu and Timothy

Overturf allowed Timothy Overturf's father, Defendant Hansueli Overturf ("Hans Overturf"), to give investment advice to Sisu's clients, even though he was suspended from November 2011 to November 2014 and December 2017 to December 2019 by the State of California from acting as an investment adviser.

2.    In 2013, while Hans Overturf was serving his first suspension by the State of California, Timothy Overturf founded Sisu.  Timothy Overturf was eighteen years old at the time.  Sisu purported to offer investment advisory and portfolio management services to high net worth clients.  Hans Overturf turned over many of his personal investment advisory clients to his son's new company, Sisu.

3.    Defendants Sisu and Timothy Overturf breached their fiduciary duties by engaging in unauthorized and unsuitable trading on behalf of Sisu's investment advisory clients from December 2017 through May 2021, by making investments in Sisu client discretionary accounts contrary to clients' instructions, and by making unsuitable investments on behalf of Sisu clients.

4.    Similarly, from 2017 to 2021, Hans Overturf also made unauthorized trades and recommended unsuitable investments for Sisu's clients, including during one of the periods he was subject to a suspension from employment in the investment advisory industry by the State of California.  Sisu, Timothy Overturf, and Hans Overturf failed to disclose this suspension and Hans Overturf's disciplinary history to Sisu's clients.

5.    Timothy Overturf was aware of his father's unauthorized trading activity in Sisu client accounts and unsuitable investment recommendations for Sisu clients, but nevertheless allowed Hans Overturf to use his limited power of attorney to trade in some Sisu client accounts, which generated advisory fees for Sisu.

6.    From 2017 to 2021, Sisu withdrew over $2 million in portfolio management fees, performance-based fees, and commissions from Sisu clients' accounts, including fees generated by unsuitable investment recommendations and by trades initiated by Sisu, Timothy Overturf and Hans Overturf that were on behalf of clients but contrary to client instructions.  Timothy

Overturf also personally received hundreds of thousands of dollars in owner draws and loans from Sisu.

7.     By engaging in this conduct, Defendants Sisu and Timothy Overturf violated Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1) & 80b-6(2), and Defendant Hans Overturf aided and abetted Sisu and Timothy Overturf's violations.  In this action, the Commission seeks injunctions; disgorgement of ill-gotten gains, with prejudgment interest; civil monetary penalties; and other appropriate relief. Unless Sisu and the Overturfs are permanently restrained and enjoined, they will continue to engage in the acts, practices, and courses of business set forth in this complaint and in acts, practices, and courses of business of similar type and object.

**JURISDICTION AND VENUE**

8.     The Commission brings this action pursuant to Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)].

9.     This Court has jurisdiction over this action pursuant to Sections 209(d), 209(e), and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e), and 80b-14].

10.     Defendants, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this complaint.

11.     Venue is proper in this District pursuant to Section 214 of the Advisers Act [15 U.S.C. § 80b-14].  Acts, transactions, practices, and courses of business that form the basis for the violations alleged in this complaint occurred in this District.  During the period described in this complaint, Defendants Timothy Overturf and Hans Overturf met clients in this District. Defendant Sisu maintained its principal place of business in Mill Valley, California, in this District.

12.     Under Civil Local Rule 3-2(d), this civil action should be assigned to the San Francisco Division, because a substantial part of the events or omissions which give rise to the claims alleged herein occurred in Marin County.

**DEFENDANTS**

13.    **Sisu Capital, LLC ("Sisu")** was a California limited liability company with its principal place of business from 2015 to 2021 in Mill Valley, California.  Sisu was registered with the State of California as an investment adviser from 2015 until January 2021 and in Ohio from May 2015 until December 2020.  Sisu continued advising clients after its registration was revoked by the State of California in January 2021.

14.    **Timothy Overturf**, age 28, is a resident of Arcata, California.  Timothy Overturf is the founder, sole legal owner and Chief Executive Officer of Sisu.  He also served as Sisu's Chief Compliance Officer from 2016 to 2018 and in 2021.  Timothy Overturf was registered with the State of California as an investment adviser representative of Sisu from November 2014 to December 2020.  Timothy Overturf continued advising clients after Sisu's registration was revoked by the State of California in January 2021.

15.    **Hans Overturf**, age 49, is currently a resident of Hallau, Switzerland and also maintained a residence in California prior to 2017.  From January 2000 through July 2009, Hans Overturf was a registered representative with several investment-related firms, including licensed broker-dealers and investment advisers.  From July 2009 to January 2010, he was a registered representative with his own financial advisory firm.  From March to May 2010, he was a registered representative with an investment advisory firm that was a predecessor to Sisu.

16.    Hans Overturf was registered as an investment adviser representative with Sisu from April to July 2015.  Hans Overturf continued advising Sisu clients after his registration was suspended by the State of California in November 2011 and December 2017.

**FACTUAL ALLEGATIONS**

A.    **Background**

        1.    Hans Overturf Engaged in a Series of Violations

17.    On November 15, 2011, the State of California suspended Hans Overturf from any position of employment, management or control of any investment adviser, broker-dealer, or commodity adviser for three years from November 15, 2011 to November 15, 2014.  The State's

Department of Corporations found in its Order suspending him that Hans Overturf made unauthorized sales of an investment product without the approval of the broker-dealer with which he was registered, and made misrepresentations in connection with an offer or sale of securities, including telling investors that the investment product was offered by the broker-dealer, when it was not.

18.     On December 19, 2011, the Financial Industry Regulatory Authority, a government-authorized not-for-profit organization that oversees U.S. broker-dealers ("FINRA"), suspended Hans Overturf for one year and fined him $10,000 for engaging in undisclosed business activities while he was employed at a dually-registered broker-dealer and investment adviser.

19.     On July 18, 2016, the State of California issued a Desist and Refrain Order finding that Hans Overturf and his firm, Overturf Financial Services, Inc., conducted business as an unregistered broker-dealer and ordered that they desist and refrain from effecting any transaction in, inducing or attempting to induce the purchase or sale of any security, until they became registered.

20.     On December 7, 2017, the State of California Department of Business Oversight suspended Hans Overturf from any position of employment, management, or control of any broker-dealer or investment adviser for an additional two years from December 7, 2017 to December 7, 2019.  The State of California found that Hans Overturf acted as an authorized agent and traded in a client's account while he was prohibited from engaging in advisory activities.

21.     Timothy Overturf knew, was reckless in not knowing, or should have known his father, Hans Overturf, had been suspended from association with any investment adviser.

        2.     <u>Timothy Overturf Founded Sisu Capital with Hans Overturf's Clients</u>

22.     In October 2013, at 18 years of age, Timothy Overturf founded Sisu.  As Timothy Overturf knew, his father was then suspended from association with any investment adviser by the State of California.  Sisu offered investment advisory and portfolio management

services to approximately forty-two high net worth clients and reported assets under management up to approximately $51.7 million. Many of Sisu's clients were legacy clients of Hans Overturf.

**B.    While Under Suspension, Hans Overturf Provided Investment Advisory Services to Sisu Clients and Made Misleading Statements to Clients**

23.    Hans Overturf provided investment advisory services to Sisu clients, including by communicating investment advice and placing trades in certain Sisu client accounts. He provided investment advice to Sisu clients during in person meetings and phone calls, and exchanged emails and other electronic messages with Sisu clients. He provided such investment advisory services while suspended by the State of California, from 2017 through 2019.

24.    Numerous clients retained Sisu under the belief that Hans Overturf was working for Sisu and that he would serve as their investment adviser, including during the period of his suspension from 2017 through 2019. Throughout their advisory relationship with Sisu, several Sisu clients considered Hans Overturf their primary investment adviser representative, and he provided direct discretionary management of their accounts.

25.    Hans Overturf utilized his limited power of attorney to trade in Sisu client accounts during his suspension. Timothy Overturf knew Hans Overturf was suspended and prohibited from providing advisory services to Sisu clients during his suspension. Nevertheless, Timothy Overturf allowed his father to communicate directly with Sisu clients and make investment decisions for Sisu managed accounts. Timothy Overturf allowed Hans Overturf to use Hans Overturf's limited power of attorney to trade in some Sisu client accounts.

26.    Timothy Overturf also participated in communications with certain clients, in which Hans Overturf also participated. During those communications, Hans Overturf and Timothy Overturf discussed with the clients recommendations to reduce certain securities holdings. These communications included discussions with Hans Overturf's long-standing clients.

27.    Although Hans Overturf knew or was reckless in not knowing about his suspensions from association with any investment adviser by the State of California from

November 2011 to November 2014 and December 2017 to December 2019, he did not inform Sisu clients about his suspensions.

28.     Likewise, even though Timothy Overturf knew, was reckless in not knowing, or should have known about his father's suspensions, Timothy Overturf never informed Sisu's clients that Hans Overturf was suspended by the State of California from association with any investment adviser from November 2011 to November 2014 and December 2017 to December 2019.

29.     In 2018, after the broker-dealer that held Sisu's clients' funds terminated its relationship with Sisu, Hans Overturf convinced several Sisu clients to give him access to their successor brokerage accounts.

30.     Hans Overturf also made misleading statements to Sisu clients regarding Sisu's termination from the brokerage platform in 2018.  Rather than informing Sisu clients that the prior brokerage firm terminated its relationship with Sisu, Hans Overturf told certain clients that Sisu was moving clients to a new brokerage firm because the new firm's fees were lower and the new firm was more flexible.

31.     Hans Overturf held himself out to Sisu clients as authorized to provide investment advisory services on Sisu's behalf.  As of March 2021, Hans Overturf used an email signature block in messages to Sisu clients, in which he stated that he held the position of "Trader" and "Head of Business Development, Sisu Holding Company, Inc."  Sisu Holding Company, Inc. is Sisu's parent company, which is owned by Timothy Overturf.  Hans Overturf also listed Sisu's office location in his email correspondence as his physical address for work, and he invited Sisu clients to set up an appointment with him by sending an email to a Sisu employee.

32.     In advising Sisu clients and trading in their accounts, Hans Overturf acted on behalf of Sisu and his actions are attributable to Sisu.

**C.    Sisu, Hans Overturf, and Timothy Overturf Traded Contrary to Client Instructions**

33.    As investment advisers, Sisu and Timothy Overturf owed a fiduciary duty to Sisu's clients to act in their best interests.  However, on multiple occasions from 2019 through 2021, Timothy and Hans Overturf made investments in Sisu client discretionary accounts contrary to clients' instructions and to benefit Defendants' own interests.

34.    For example, in October 2019, and again in March 2021, Timothy Overturf purchased thinly-traded stock of a particular bank ("the Bank") for five Sisu accounts, but in each instance the transactions were contrary to the clients' instructions.

35.    In one instance, Timothy Overturf purchased 2,300 additional shares of the Bank's stock between March 2020 and March 2021 for the account of a Sisu client after that client had specifically and repeatedly instructed Hans Overturf, verbally and in writing, to sell his holdings in the Bank's stock and that he did not want to invest in the stock of any bank.  Timothy Overturf was aware of the client's instruction to Hans Overturf.

36.    In another instance, a different Sisu client told Hans Overturf that the client was not interested in investing in the Bank, but the Defendants proceeded to purchase the Bank's stock in the client's account without the client's knowledge.

37.    These trades were made as part of Timothy and Hans Overturfs' plan, which they did not disclose to the five clients, to collectively amass enough shares among Sisu's clients and themselves for Timothy Overturf to propose business partnership ideas to the Bank, including leveraging the Bank's charter to accept crypto assets and to offer Bank customers Sisu's advisory services. [26]

38.    Timothy Overturf knew, was reckless in not knowing, or should have known that the Defendants were trading contrary to client instructions.  Hans Overturf knew or was reckless in not knowing that he was making trades contrary to Sisu client instructions.

1

2

        **D.**    **Hans Overturf Made Unsuitable Investment Recommendations to Sisu Clients**

3

4

5

6

7

8

9

10

      39.    From 2017 to 2021, Hans Overturf also recommended to Sisu clients, and purchased on their behalf, unsuitable, complex financial instruments.  He did this for approximately 16 accounts, including some retirement accounts, for clients ranging from 48 to 89 years of age.  Specifically, Hans Overturf purchased, or directed Timothy Overturf to purchase, for Sisu clients investments in an inverse short-term volatility futures product ("the inverse short-term ETP").  The prospectus for this product warns that it is "intended for short-term use; investors should actively manage and monitor their investments, as frequently as daily."

11

12

13

14

      40.    Defendants purchased the inverse short-term ETP for Sisu clients, including a corporate defined benefit pension plan and a person with a disability whose Sisu account was intended to preserve income.  For most of the 16 accounts, the inverse short-term ETP was held for months, and in some cases, for over a year.

15

16

17

18

      41.    The inverse short-term ETP was not a suitable investment for the 16 Sisu client accounts because those clients' investment objective was to preserve income over a long period of time.  Contrary to their investment goals, the inverse short term security's return was based on daily holding periods.

19

20

21

      42.    On at least one occasion in 2021, Hans Overturf also increased a client's holdings in the inverse short-term ETP, despite repeated written and verbal instructions by the client to sell the product.

22

23

      43.    Some Sisu clients suffered significant losses on the unsuitable, inverse short-term ETP instruments.

24

25

      44.    Timothy Overturf knew, was reckless in not knowing, or should have known Sisu was making unsuitable investments for Sisu clients.

26

27

      45.    Hans Overturf knew or was reckless in not knowing that he was making unsuitable investments in Sisu client accounts.

28

**E.    Sisu, Timothy Overturf, and Hans Overturf's Investment Advisory Services Generated Significant Fees**

46.    According to the terms of the advisory management fee agreements entered into with clients, Sisu provided portfolio management and other investment advisory services for an annual fee equal to 2% of assets under management, plus a 20% performance fee.

47.    From 2017 to 2021, Sisu and Timothy Overturf received at least $2 million in payments from clients while acting contrary to their clients' interests, including during periods of Hans Overturf's undisclosed suspension and while making unsuitable and unauthorized trades for client accounts.  Timothy Overturf received approximately $858,000 in owner draws and loans from Sisu from 2017 to 2019.

48.    Timothy Overturf knew, was reckless in not knowing, or should have known that Sisu was withdrawing fees from Sisu clients' accounts while acting contrary to their interests.

49.    Hans Overturf knew or was reckless in not knowing that his actions on behalf of Sisu resulted in Sisu's breach of its fiduciary duty.

**FIRST CLAIM FOR RELIEF**

*Violations of Sections 206(1) and 206(2) of the Advisers Act*

*By Defendants Sisu and Timothy Overturf*

50.    The Commission re-alleges and incorporates by reference Paragraph numbers 1 through 49.

51.    At all relevant times, Defendants Sisu and Timothy Overturf were investment advisers within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].  Defendants Sisu and Timothy Overturf each were in the business of providing investment advice concerning securities for compensation.  Defendant Timothy Overturf was also an investment adviser due to his ownership, management and control of Defendant Sisu.

52.    As set forth above, Defendants Sisu and Timothy Overturf, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, acting intentionally, knowingly or recklessly and negligently: (a) have employed or are employing devices, schemes,

or artifices to defraud clients and/or potential clients; and/or (b) have engaged or are engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon a client and/or prospective client.

53.    By reason of the foregoing, Defendants Sisu and Timothy Overturf directly or indirectly violated, and unless restrained and enjoined will continue to violate, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## SECOND CLAIM FOR RELIEF

*Aiding and Abetting Violations of Sections 206(1) and 206(2) of the Advisers Act*

*By Defendant Hans Overturf*

54.    The Commission re-alleges and incorporates by reference Paragraph numbers 1 through 49.

55.    As set forth above, Defendants Sisu and Timothy Overturf were investment advisers within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)]. Defendants Sisu and Timothy Overturf were in the business of providing investment advice concerning securities for compensation. Defendant Timothy Overturf was also an investment adviser due to his ownership, management and control of Defendant Sisu.

56.    As set forth above, Defendants Sisu and Timothy Overturf, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, acting intentionally, knowingly or recklessly and negligently: (a) have employed or are employing devices, schemes, or artifices to defraud clients and/or potential clients; and/or (b) have engaged or are engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon a client and/or prospective client.

57.    As set forth above, Defendant Hans Overturf knowingly or recklessly provided substantial assistance to Defendants Sisu and Timothy Overturf in their violations of Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) and (2)]. During the relevant period, Hans Overturf traded in Sisu clients' accounts and provided investment advice to Sisu clients,

knowing, or was reckless for not knowing, that the trades and advice were contrary to client instructions, and executed or given during the time he was suspended by the State of California.

58.     By reason of the foregoing, Defendant Hans Overturf aided and abetted, and unless restrained and enjoined, will continue to aid and abet Defendants Sisu and Timothy Overturf's violations of Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) and (2)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

### I.

Permanently enjoin Defendants Sisu and Timothy Overturf, and their officers, agents, servants, employees and attorneys, and those in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and (2)], and permanently enjoin Defendant Hans Overturf from aiding and abetting violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and (2)].

### II.

Issue an order requiring Defendants Sisu and Timothy Overturf to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this complaint, together with prejudgment interest thereon.

### III.

Issue an order requiring Defendants Sisu, Timothy Overturf and Hans Overturf to pay civil monetary penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

### IV.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## V.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated:  August 1, 2023                    Respectfully submitted,


 _/s/ Alice L. Jensen_
ALICE L. JENSEN
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION