UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SISU CAPITAL, LLC, et al.,<br><br>Defendants. | Case No. 3:23-cv-03855-JSC<br><br>**HANSUELI OVERTURF'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 40, 41 |

The Securities and Exchange Commission ("SEC") alleges Hansueli Overturf made unauthorized trades and gave unsuitable investment advice to clients of his son's investment firm, Sisu Capital, LLC ("Sisu"), even though Mr. Overturf was suspended by the state of California from acting as an investment adviser. (Dkt. No. 1.)[1] Now pending before the Court is Mr. Overturf's motion to dismiss. (Dkt. Nos. 40, 41.)[2] Having considered the briefing, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), and DENIES the motion to dismiss. The SEC has adequately pled Mr. Overturf aided and abetted Sisu's and his son's violations of sections 206(1) and 206(2) of the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-6(1) & 80b-6(2). **The initial case management conference remains on calendar at 9:00 a.m. on June 20, 2024 via Zoom video.**

## COMPLAINT ALLEGATIONS

Hansueli Overturf's son, Timothy Overturf, founded Sisu in 2013, when Timothy was 18

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] Mr. Overturf filed a motion to dismiss with an attached declaration (Dkt. No. 40), then refiled a seemingly identical motion to dismiss with five newly attached exhibits. (Dkt. No. 41.) The Court reviewed the motion, the declaration, and all the exhibits attached to the second motion in its analysis.

years old. (Dkt. No. 1 ¶¶ 1-2.)   At the time Sisu was founded, Hansueli Overturf was suspended by the State of California from acting as an investment adviser. (*Id.*) "Sisu purported to offer investment advisory and portfolio management services to high net worth clients." (*Id.* ¶ 2.) "Hans Overturf turned over many of his personal investment advisory clients to his son's new company." (*Id.*)

"Sisu and Timothy Overturf breached their fiduciary duties by engaging in unauthorized and unsuitable trading on behalf of Sisu's investment advisory clients from December 2017 through May 2021, by making investments in Sisu client discretionary accounts contrary to clients' instructions, and by making unsuitable investments on behalf of Sisu clients." (*Id.* ¶ 3.) "[F]rom 2017 to 2021, Hans Overturf also made unauthorized trades and recommended unsuitable investments for Sisu's clients"—including giving advice while he was suspended by the State of California from giving such advice from November 2011 to November 2014 and December 2017 to December 2019. (*Id.* ¶¶ 1, 5.)

"Numerous clients retained Sisu under the belief that Hans Overturf was working for Sisu and that he would serve as their investment adviser, including during the period of his suspension from 2017 through 2019." (*Id.* ¶ 24.) During his suspension from 2017 to 2019, Hansueli Overturf "provided investment advisory services to Sisu clients, including by communicating investment advice and placing trades in certain Sisu client accounts," "provided investment advice to Sisu clients during in person meetings and phone calls," and "exchanged emails and other electronic messages with Sisu clients." (*Id.* ¶ 23.) Moreover, while Timothy Overturf knew his father was suspended and prohibited from providing investment advice, Timothy Overturf "allowed Hans Overturf to use Hans Overturf's limited power of attorney to trade in some Sisu accounts." (*Id.* ¶ 25.) Hansueli Overturf "held himself out to Sisu clients as authorized to provide investment advisory services on Sisu's behalf"—for example, his email signature block stated he was "Head of Business Development, Sisu Holding Company, Inc.." (*Id.* ¶ 31.) He also "invited Sisu clients to set up an appointment with him by sending an email to a Sisu employee." (*Id.*) Neither Hansueli Overturf nor his son informed Sisu clients about the suspensions. (*Id.* ¶¶ 27-28.)

Hansueli Overturf and his son also traded contrary to client instructions. For example, "in

October 2019, and again in March 2021, Timothy Overturf purchased thinly-traded stock of a particular bank ("the Bank") for five Sisu accounts, but in each instance the transactions were contrary to the clients' instructions." (*Id.* ¶ 34.) "In one instance, Timothy Overturf purchased 2,300 additional shares of the Bank's stock between March 2020 and March 2021 for the account of a Sisu client after that client had specifically and repeatedly instructed Hans Overturf, verbally and in writing, to sell his holdings in the Bank's stock and that he did not want to invest in the stock of any bank" and "Timothy Overturf was aware of" those instructions. (*Id.* ¶ 35.) "These trades were made as part of Timothy and Hans Overturfs' plan, which they did not disclose to the five clients, to collectively amass enough shares among Sisu's clients and themselves for Timothy Overturf to propose business partnership ideas to the Bank." (*Id.* ¶ 37.)

Moreover, "[f]rom 2017 to 2021, Hans Overturf also recommended to Sisu clients, and purchased on their behalf, unsuitable, complex financial instruments." (*Id.* ¶ 39.) "Specifically, Hans Overturf purchased, or directed Timothy Overturf to purchase, for Sisu clients investments in an inverse short-term volatility futures product ('the inverse short-term ETP')" for 16 client accounts. (*Id.*) "For most of the 16 accounts, the inverse short-term ETP was held for months, and in some cases, for over a year," (*id.* ¶ 40), even though "[t]he prospectus for this product warns that it is 'intended for short-term use; investors should actively manage and monitor their investments, as frequently as daily.'" (*Id.* ¶ 39.) "The inverse short-term ETP was not a suitable investment for the 16 Sisu client accounts because those clients' investment objective was to preserve income over a long period of time." (*Id.* ¶ 41.) Further, "[o]n at least one occasion in 2021, Hans Overturf also increased a client's holdings in the inverse short-term ETP, despite repeated written and verbal instructions by the client to sell the product." (*Id.* ¶ 42.) "Some Sisu clients suffered significant losses" due to these investments. (*Id.* ¶ 43.)

"From 2017 to 2021, Sisu and Timothy Overturf received at least $2 million in payments from clients while acting contrary to their clients' interests, including during periods of Hans Overturf's undisclosed suspension and while making unsuitable and unauthorized trades for client accounts." (*Id.* ¶ 47.) "Timothy Overturf received approximately $858,000 in owner draws and loans from Sisu from 2017 to 2019." (*Id.*)

3

The SEC alleges Sisu and Timothy Overturf violated Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1) & 80b-6(2), and Hansueli Overturf aided and abetted their violations.  (*Id.* ¶ 7.)

## LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). When, as here, the complaint alleges fraud, the plaintiff "must state with particularity the circumstances constituting fraud or mistake," though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

Generally, a district court cannot "consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6);" however, Federal Rule of Evidence 201 allows a district court to do so through judicial notice.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  A court can take judicial notice of facts "not subject to reasonable dispute" because they are "generally known within the court's territorial jurisdiction" or can be "accurately determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  This includes "undisputed matters of public record, including documents on file in federal and state courts."  *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

## DISCUSSION

Sections 206(1) and 206(2) of the Investment Advisers Act provide:

> It shall be unlawful for any investment adviser by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--
> (1) to employ any device, scheme, or artifice to defraud any client or prospective client;
> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client[.]

15 U.S.C. § 80b-6(1)-(2).  "[S]cienter is a required element for violations of . . . Advisers Act §

4

206(1)" but it "is not required for" violations of § 206(2).  *Vernazza v. S.E.C.*, 327 F.3d 851, 860 (9th Cir.), *amended*, 335 F.3d 1096 (9th Cir. 2003); *see also Sec. & Exch. Comm'n v. Langemeier*, No. 3:22-CV-00269-LRH-CSD, 2024 WL 664452, at *12 (D. Nev. Feb. 16, 2024) (explaining "[t]he same elements are required to prove a Section 206(2) violation" as a Section 206(1) violation 'except that scienter is not required" for a section 206(2) violation).  "[K]nowing or reckless conduct" constitutes scienter for § 206(1).  *Id.*  "Proof of simple negligence suffices for a violation of Section 206(2)."  *Robare Grp., Ltd. v. Sec. & Exch. Comm'n*, 922 F.3d 468, 472 (D.C. Cir. 2019).  Further, neither provision "require[s] proof of intent to injure and actual injury to the client."  *Sec. & Exch. Comm'n v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 195 (1963).

"The Investment Advisers Act of 1940 was 'directed not only at dishonor, but also at conduct that tempts dishonor.'"  *Sec. & Exch. Comm'n v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 200 (1963) (quoting *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 549 (1961)) (cleaned up).  Moreover, because investment advisors are fiduciaries for their clients, they have "an affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading his clients."  *Id.* at 194 (cleaned up).  Accordingly, "[f]ailure to disclose material facts" constitutes "fraud or deceit" for purposes of the Investment Act.  *Id.* at 200.  "[F]ailure by an investment adviser to disclose potential conflicts of interest to its clients constitutes fraud within the meaning of Sections 206(1) and (2)."  *Robare Grp., Ltd. v. Sec. & Exch. Comm'n*, 922 F.3d 468, 472 (D.C. Cir. 2019); *see also Vernazza v. S.E.C.*, 327 F.3d 851, 859-60 (9th Cir.), *amended*, 335 F.3d 1096 (9th Cir. 2003) (holding investment advisers "ha[ve] a duty to disclose any potential conflicts of interest accurately and completely," and "[i]t is indisputable that potential conflicts of interest are 'material' facts").

The SEC can bring an enforcement action in U.S. district court against "any person that knowingly or recklessly has aided[ or] abetted . . . a violation of any provision of" the Investment Advisors Act.  15 U.S.C. § 80b-9(f).  To establish Hansueli Overturf "aided and abetted" Timothy Overturf's and Sisu's "violation of federal securities laws, it must be found that: (1) [Timothy Overturf and Sisu] violated the relevant securities laws; (2) [Hansueli Overturf] had knowledge of

5

the primary violation and of his [] own role in furthering it; and (3) [Hansueli Overturf] provided substantial assistance in the primary violation." *Ponce v. S.E.C.*, 345 F.3d 722, 737 (9th Cir. 2003) (applying this test to Sections 13(a) and 13(b)(2) of the Exchange Act); *see also U.S. S.E.C. v. Fehn*, 97 F.3d 1276, 1288 (9th Cir. 1996) (applying the same three factor test to an allegation of aiding and abetting as to Sections 10(b) and 15(d) of the Securities Exchange Act); *Sec. & Exch. Comm'n v. Roberts*, No. 8:21-CV-01615-DOC-DFM, 2022 WL 2203676, at *5 (C.D. Cal. Jan. 25, 2022) (applying same three factor test to allegations of aiding and abetting violations of §§ 206(1) and 206(2) of the Investment Advisers Act); *Sec. & Exch. Comm'n v. Sztrom*, 538 F. Supp. 3d 1050, 1062 (S.D. Cal. 2021) (applying same three factor test to an allegation of aiding and abetting violations of § 204 of the Advisers Act).

The SEC has sufficiently pled Hansueli Overturf aided and abetted Timothy Overturf's and Sisu's violations of §§ 206(1) and 206(2) of the Investment Advisers Act. The SEC alleges Timothy Overturf and Sisu advised clients about investing in securities and received compensation for that investment, so the SEC has sufficiently pled Sisu and Timothy Overturf were investment advisers. Further, the SEC alleges Sisu and Timothy Overturf violated their fiduciary duties by purchasing the bank securities contrary to clients' expressed preferences to benefit their own financial interests without disclosing their potential conflict of interest to their clients, and by failing to disclose Hansueli Overturf's suspension to their clients while allowing Hansueli Overturf to participate in advising clients. Finally, the SEC pleads both that Hansueli Overturf (1) had knowledge of the violation and his own role in furthering it and (2) provided substantial assistance in the primary violation by alleging Hansueli Overturf's extensive involvement in Sisu and with Sisu clients.

Indeed, this case closely resembles *Securities and Exchange Commission v. Sztrom*, in which the district court held the SEC adequately pled a father aided and abetted in his son's violations of §§ 206(1) and (2) of the Investment Advisers Act. 538 F. Supp. 3d 1050 (S.D. Cal. 2021). In *Sztrom*, the SEC alleged Michael Sztrom was prohibited from using various brokerage platforms, and therefore could not execute trades for his clients, due to an ongoing Financial Industry Regulatory Authority investigation. *Id.* at 1055. Michael's son, David, then obtained a

6

1  role as an investment adviser representative for a company that was a registered investment
2  adviser. *Id.* The SEC alleged Michael and David "deceived [their] clients in breach of their
3  fiduciary duties by having Michael continue to act as the clients' investment adviser" despite not
4  despite not being an investment adviser representative associated with the company and "being
5  prohibited from using [] brokerage platform[s]." *Id.* The court held the "SEC has pled sufficient
6  detailed allegations of the Defendants' alleged fraudulent scheme to mislead and deceive" their
7  "clients by concealing that Michael was not associated with [the company] or another registered
8  investment adviser," and that he was "banned using from the [brokerage] platform," among other
9  things. *Id.* at 1058. Further, the court concluded such allegations sufficiently pled materiality
10 because it was "plausible that a reasonable investor would have considered it important to know
11 that the individual giving them investment advice and making trades on their behalf was not
12 associated with any registered investment adviser as an [investment adviser representative]" and
13 "was prohibited from accessing the brokerage platform containing their investment portfolio." *Id.*
14 at 1061.

15 Similarly, here, drawing all inferences from the alleged facts in the SEC's favor, Hanseuli
16 Overturf and his son represented to clients that Hansueli Overturf was an investment adviser
17 working for Sisu without disclosing that he had been suspended and could not work as an
18 investment adviser. Such deception is sufficient to plead violations of §§ 206(1) and 206(2) of the
19 Investment Advisers Act.

20 Hansueli Overturf contends the SEC's complaint must be dismissed under Federal Rules of
21 Civil Procedure 12(b)(6) for three main reasons: (1) the SEC fails to allege Hansueli Overturf was
22 an investment adviser representative or that he acted as one; (2) the SEC's allegation Hansueli
23 Overturf made unsuitable investment recommendations is "only pointing to a small slice of a
24 diversified portfolio" and therefore any claim he made poor investment decisions is substantively
25 incorrect and (3) the SEC fails to plead the conditions for aiding and abetting. Each argument is
26 unpersuasive.

27 First, while the SEC does not allege Hansueli Overturf received compensation for his
28 investment advice, the SEC does not need to demonstrate Hansueli Overturf was an investment

7

adviser to plausibly allege liability under an aiding and abetting theory. In the Investment Advisors Act, an "investment adviser" is defined as

> any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities.

15 U.S.C. § 80b-2(a)(11). Hansueli Overturf asserts he is not an investment adviser because his advice was "unpaid" and therefore "does not fall under the definition of Investment Adviser" in the Investment Advisers Act.[3] (Dkt. No. 41 at 6.) However, the SEC alleges Hansueli Overturf provided substantial assistance to Sisu and Timothy Overturf—who are alleged to have received payments for investment advice and therefore were investment advisers—and these allegations are sufficient to support an aiding and abetting theory of liability.

Second, Hansueli Overturf's argument that the SEC unfairly focuses on a few investments rather than looking at the investment portfolios as a whole is premature. Hansueli Overturf contends he hedged his riskier bets, so the portfolios, as whole, constituted wise investment decisions even if certain individual investment decisions within those portfolios were risky. However, these allegations dispute the factual accuracy of the complaint and rely on material outside the complaint. At the motion to dismiss stage, with limited exceptions, the Court only considers material attached to the complaint and assumes the truth of all factual allegations in the complaint. So, even if Hansueli Overturf's contentions turn out to be true, they do not warrant dismissal at this stage.

Hansueli Overturf also argues "[i]f the underlying offenses that the plaintiff alleges were

---

[3] Hansueli Overturf also submits three exhibits (Dkt. Nos. 41-1, 41-2, 41-3, 41-4, and 41-5), which he asserts demonstrates he offers "unsolicited and unpaid advise" about the stock market and the economy. (Dkt. No. 41 at 6.) The Court does not consider these documents as they are not attached to the complaint are not properly subject to judicial notice. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."). However, the Court notes considering these documents would not change the Court's analysis nor conclusions, as none of the documents establish Hansueli Overturf was not aiding and abetting Sisu or Timothy Overturf in violating securities laws.

8

grave and a concern to some clients, and clients had been chronically overcharged, why did not a single client file a complaint of any sort, despite the SEC's extensive interviews and the posing of many leading questions?" (Dkt. No. 41 at 10.)   But the complaint does not allege that no client filed a complaint, so to assume that no client did so would be to improperly draw inferences in Hansueli Overturf's favor.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (explaining, at the motion to dismiss stage, courts "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party").  Moreover, materiality under securities laws requires "a substantial likelihood that the disclosure of the omitted fact would have been viewed by *the reasonable investor* as having significantly altered the 'total mix' of information made available." *S.E.C. v. Todd*, 642 F.3d 1207, 1215 (9th Cir. 2011) (cleaned up)(emphasis added).  So, securities laws instruct the Court to look at an objective, reasonable investor rather than the particular clients impacted by Defendants' activities.  *See also Sztrom*, 538 F. Supp. 3d at 1061 ("[T]he 'reasonable investor' test is an objective standard, and thus the reactions of the actual Sztrom clients are not dispositive.").  So, even if Hansueli Overturf's clients were unperturbed by the conduct demonstrated by the complaint's allegations, the SEC has sufficiently pled a reasonable investor would have considered Sisu and Timothy Overturf's misrepresentations to be material.

Finally, Hansueli Overturf cites the wrong legal standard for aiding and abetting liability. Hansueli Overturf asserts:

> [T]he elements necessary to convict under aiding and abetting theory are:
>
> 1. That the accused had specific intent to facilitate the commission of a crime [in this instance the violation of the Advisers Act] by another;
>
> 2. That the accused had the requisite intent of the underlying substantive offense
>
> 3. That the accused assisted or participated in the commission of the underlying substantive offense; and
>
> 4. That someone committed the underlying offense.

(Dkt. No. 41 at 9 (citing U.S. Dep't of Just., *Criminal Resource Manual: 2474. Elements Of Aiding And Abetting* (Oct. 1998) https://www.justice.gov/archives/jm/criminal-resource-manual-

2474-elements-aiding-and-abetting).) However, as the *Criminal Resource Manual* that Hansueli Overturf cites explains, these are the elements necessary to be "convict[ed] as a principal of aiding and abetting the commission of a crime." Hansueli Overturf is facing civil, rather than criminal, charges of violating securities laws. In such scenarios, a different standard of aiding and abetting liability applies, and the SEC was not required to plead Hansueli Overturf had the specific intent to facilitate the commission of the securities violations. Hansueli Overturf also argues the SEC "fails to provide concrete evidence that Hansueli Overturf knowingly provided substantial assistance to Timothy Overturf or Sisu Capital" because "[t]here is no clear indication that Hansueli Overturf had specific intent to facilitate any violations of the Advisors Act." (Dkt. No. 52 at 2.) However, at the motion to dismiss stage, the SEC is not required to provide evidence; instead, the SEC's factual allegations are assumed to be true. And, as discussed above, to prove aiding and abetting under the Investment Advisor's Act, the SEC need not demonstrate Hanseuli Overturf intended to violate the Advisors Act, but rather only that he had knowledge of Sisu and Timothy Overturf's violations and provided them substantial assistance in their violations. The SEC has sufficiently pled the required elements of the aiding and abetting standard for charges under the Investment Advisors Act.

So, the Court holds the SEC adequately pleads Hansueli Overturf aided and abetted Sisu's and Timothy Overturf's violations of §§ 206(1) and 206(2) of the Investment Advisers Act, and therefore DENIES Hansueli Overturf's motion to dismiss.

## CONCLUSION

For the reasons stated above, the motion to dismiss is DENIED. **The initial case management conference remains on calendar at 9:00 a.m. on June 20, 2024 via Zoom video. Mr. Overturf or his retained counsel, if any, must appear at that time.**

This Order resolves Dkt. Nos.: 40, 41.

**IT IS SO ORDERED.**

Dated: June 10, 2024

_____
JACQUELINE SCOTT CORLEY
United States District Judge

10